## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PROGRESSIVE SOUTHEASTERN )
INSURANCE CO., )
                                 )
        Plaintiff, )
    v. )        **MEMORANDUM OPINION**
                                 )        **AND RECOMMENDATION**
                                 )        1:07CV412
                                 )
SONYA GREENE and )
JODY L. GREENE, )
                                 )
        Defendants. )

In this case an insurance company seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 regarding the company's obligation to provide underinsured motorist ("UIM") coverage to its insureds. Pending before this court is a motion for summary judgment filed by the insurer Plaintiff Progressive Southeastern Insurance Co. ("Progressive Southeastern") (docket no. 13), as well as a motion "requesting court's consideration of summary judgment motion prior to trial"[1] (docket no. 18). The insureds, Defendants Sonya Greene and Jody L. Greene, have filed their own cross motion for summary judgment (docket no. 22). The parties have filed responsive pleadings and this matter is ripe for disposition. Since there has been no consent, I must deal with the motions by way of a recommendation. For the

---

[1] Plaintiff asserts that it filed this motion because it failed to file its notice of intent to file a motion for summary judgment under Local Rule 56.1 and also because it filed its summary judgment motion on the 31st day after the close of discovery rather than within 30 days as required by Local Rule 56.1.

reasons which follow, it will be recommended that Plaintiff Southeastern Progressive's motion requesting the court's consideration of summary judgment motion before trial be granted, Plaintiff Southeastern Progressive's motion for summary judgment be denied, Defendants' motion for summary judgment be granted, and an order be entered declaring that the Greenes are entitled to UIM coverage in the amount of $1 million.

**Background**

As noted, this action involves an insurance coverage dispute. Progressive Southeastern brought this declaratory judgment action pursuant to 28 U.S.C. § 2201(a), seeking a determination that a policy of motor vehicle liability insurance issued by Progressive Southeastern to Defendant Sonya Greene as policy number 10812367-7 ("the Policy"), affords no underinsured motorist ("UIM") coverage for bodily injury damages sustained by Defendant Jody Greene in an automobile accident on July 1, 2006. The claims are in this court based on diversity of citizenship under 28 U.S.C. § 1332(a)(1).

**Undisputed Facts**

On July 1, 2006, Defendant Jody Greene was injured when an automobile being driven by Francis Schuler collided with a motorcycle being driven by Mr. Greene. On that date, Mr. Greene was married to Defendant Sonya Greene and was residing with Mrs. Greene. On the date of the accident, Mrs. Greene was the named insured under the Progressive Southeastern policy at issue here. Schuler

-2-

was alleged to be at fault in causing the accident, and liability insurance was paid to Mr. Greene under Schuler's policy. Mr. Greene has now asserted a claim for benefits under the Progressive Southeastern Policy, seeking UIM coverage in excess of the liability coverage amounts available to Greene under Schuler's policy.

The Progressive Southeastern Policy in effect on the date of the accident was the eleventh renewal of a Policy initially sold to Mrs. Greene on July 14, 2000. (Potts Aff. ¶ 4; Burton Aff. ¶ 4 & Exs. A1-A13.) Mrs. Greene purchased the Policy through the All Risk Insurance Agency, which is an independent agent authorized to sell motor vehicle policies on behalf of Progressive Southeastern. (Potts Aff. ¶¶ 3, 5.) After the initial issuance of the Policy on July 14, 2000, the policy was renewed eleven times before July 1, 2006. (Burton Aff. ¶ 4, Exs. A1-A13.) The eleventh policy renewal was in effect on the date of the accident, as policy number 10812367-7. (Burton Aff. ¶ 18 & Exs. A1-A13.)

The policy declarations for the initial policy expressly stated that Mrs. Greene rejected UIM coverage under her policy, and selected only uninsured (UM) coverage in the amounts of $50,000 per person and $100,000 per accident for bodily injury and $25,000 per accident for property damage, subject to a $100 property damage deductible. (Burton Aff. ¶¶ 12-13, Ex. A1.) Progressive Southeastern never charged or collected any premium for any UIM coverage under the policy between its initial issuance in July 2000 and the July 2006 accident. (Burton Aff. ¶ 19.)

Progressive Southeastern has been unable to locate or produce the Selection/Rejection form that was allegedly executed by Mrs. Greene. Mrs. Greene does not remember whether she signed the Selection/Rejection form for UIM coverage. On summary judgment, Progressive Southeastern argues that all of the evidence of record, including evidence of Progressive Southeastern's routine business practices, shows that Mrs. Greene was offered and rejected UIM coverage. The Greenes contend, however, that Progressive Southeastern's failure to produce the form compels a conclusion that the Greenes are entitled to UIM coverage under the Policy.

**Discussion**

**Standard of Review**

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine

issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).

In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir. 1995). Mere allegations and denials, however, are insufficient to establish a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251 (citations omitted). Thus, the moving party can bear its burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish its claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. With these principles in mind, the court will address the motions for summary judgment.

Interpretation of Insurance Contracts under North Carolina Law[2]

Under North Carolina law, "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch,* 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). Moreover, the North Carolina courts have held that in determining whether insurance coverage is provided by a particular automobile liability insurance policy, careful attention must be given to the type of coverage, the relevant statutory provisions, and the terms of the policy. *Vasseur v. St. Paul Mut. Ins. Co.*, 123 N.C. App. 418, 420, 473 S.E.2d 15, 16 (1996)).

North Carolina's Motor Vehicle Safety and Financial Responsibility Act ("the Act") requires automobile insurers to offer both uninsured motorist ("UM") coverage and underinsured motorist ("UIM") coverage. *See* N.C. GEN. STAT. § 20-279.21(b)(3), (b)(4). The Act is a "remedial statute which must be liberally construed in order to achieve the beneficial purpose intended by its enactment," which is to protect "innocent victims who may be injured by financially irresponsible motorists."

---

[2] Since this is a diversity action brought in North Carolina, the court must apply North Carolina's choice of law rules. Under North Carolina's choice of law rules regarding the interpretation of insurance contracts, the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract. *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). The North Carolina courts have recognized an exception to this general rule where a close connection exists between this State and the interests insured by an insurance policy. *Id*. Here, both parties assume that the insurance policies must be interpreted within the framework of North Carolina law, and it is reasonable to infer that North Carolina law applies under either the general rule or the "close connection" exception.

*Hendrickson v. Lee*, 119 N.C. App. 444, 449, 459 S.E.2d 275, 278 (1995) (internal quotations omitted). The North Carolina Supreme Court has observed that the purpose of the Act is "best served when the statute is interpreted to provide the innocent victim with the *fullest possible protection*" from the negligent acts of an underinsured motorist. *Proctor v. N.C. Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 225, 376 S.E.2d 761, 764 (1989) (emphasis added).

The type of coverage at issue is UIM. Under the Act, absent proof of a valid rejection, a policy that includes UM coverage and contains bodily injury liability limits exceeding the statutory minimums must provide UIM coverage. *State Farm Mut. Auto. Ins. Co. v. Fortin*, 350 N.C. 264, 269, 513 S.E.2d 782, 784 (1999); N.C. GEN. STAT. § 20-279.21(b)(4). An insurer bears the burden of establishing the validity of a rejection of UIM motorist coverage. *Hendrickson*, 119 N.C. App. at 450, 459 S.E.2d at 279. Moreover, valid rejection of UIM coverage must be made "in writing . . . on a form promulgated by the [North Carolina Rate] Bureau and approved by the [N.C.] Commissioner of Insurance." N.C. GEN. STAT. § 20-279.21(b)(4).

The North Carolina courts require strict compliance with the above statutory requirement that a rejection of UIM coverage must be in writing and that it must be on a form that is specifically promulgated by the Rate Bureau and the Commissioner of Insurance. *See Fortin,* 350 N.C. at 269, 513 S.E.2d 784-85 ("The language of [G.S. 20-279.21(b)(4)] is mandatory. An insurer is obligated to obtain the insured's selection or rejection of [UIM] coverage *in writing* and *on a form* promulgated by the

-7-

Rate Bureau and approved by the Commissioner."). In keeping with this policy of strict compliance, for instance, in *Martin v. Continental Insurance Co.*, the North Carolina Court of Appeals rejected an insurer's contention that, despite that a rejection was not made on the approved Rate Bureau form, the insured had nevertheless "clearly and unambiguously reject[ed]" UIM coverage and therefore the rejection should be "valid and binding." 123 N.C. App. 650, 658, 474 S.E.2d 146, 150 (1996). The Court of Appeals observed that the fact that the insured had clearly rejected coverage was "beside the point," because that argument "ignore[d] the fact that" the court had always "strictly enforced" the requirement that the proper form must be used "in order to 'assure compensation [for] the innocent victims of uninsured or underinsured drivers'–the primary purpose of the Act." *Id.* (quoting *Vasseur*, 123 N.C. App. at 423, 473 S.E.2d at 17).

In another case, *Sanders v. American Spirit Insurance Co.*, the North Carolina Court of Appeals rejected an insurer's argument that a form regarding waiver of UIM coverage, although slightly different from the form promulgated and approved by the Rate Bureau, was a valid rejection because the form "substantially complied" with the Rate Bureau form. 135 N.C. App. 178, 183, 519 S.E.2d 323, 326 (1999). The North Carolina Court of Appeals found that "substantial compliance" was simply not sufficient to meet the strict requirements of section 20-279.21(b)(4). *Id.* Similarly, in *Erie Insurance Exchange v. Miller*, the North Carolina Court of Appeals held that the purported rejection of UIM coverage was not valid where the type size on the

-8-

Case 1:07-cv-00412-WO-WWD   Document 27   Filed 09/05/08   Page 8 of 20

form was substantially smaller than on the approved form, and where the contents of the Selection/Rejection form were merged into the broader policy application instead of being presented in a stand-alone form as approved. 160 N.C. App. 217, 220, 584 S.E.2d 857, 859 (2003).

Progressive Southeastern's Evidence of Its Routine Business Practices to Show that Mrs. Greene Was Offered and Rejected UIM Coverage

As the above cases demonstrate, the North Carolina courts require strict compliance with section 20-279.21(b)(4). It is undisputed that Progressive Southeastern cannot locate and has not produced a signed form in which Mrs. Greene specifically rejected UIM coverage. Progressive Southeastern contends, however, that despite its failure to produce the signed form, it may present evidence of its routine business practices to show that Mrs. Greene did sign the requisite form specifically rejecting UIM coverage, and that the form that she signed was identical to the approved Rate Bureau form. *See* FED. R. EVID. 406 (stating that evidence "of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice"); *see also Wiles v. Nationwide Life Ins. Co.*, 334 F.2d 296, 300 (4th Cir. 1964) (approving the use of evidence of the general standard of customary practice in the insurance industry to show that the insurer had waived its right to cancel a policy for nonpayment of a premium).

To submit evidence of its routine business practices, Plaintiff Progressive Southeastern has offered the affidavits of All Risk agency owner James Potts and Progressive Southeastern employee Tiffany Burton. These affidavits aver that the issuance of the Policy was done in accordance with procedures established by Progressive Southeastern and in effect at that time, for the sale of such policies by independent insurance agencies. (Potts Aff. ¶ 10; Burton Aff. ¶ 11.) According to the affidavits, Mrs. Greene would have been required to sign a policy application and the requisite N.C. Form 0185 Selection/Rejection Form expressing the desired type and amounts of UM and UIM coverage in the amounts she selected on the policy before the application was submitted electronically to Progressive Southeastern. Under those procedures, a policy application for a Progressive Southeastern policy would have been generated through the agency's access of a computer database maintained by Progressive Southeastern. (Potts Aff. ¶ 6; Burton Aff. ¶ 7.) When the agency initiated the application process through this database, all forms necessary for completion of the policy application would have been automatically generated in the All Risk Agency office. (Potts Aff. ¶ 6.) These documents would have included the North Carolina Uninsured/Underinsured Selection/Rejection Form Number NC 0185, which was the form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance for the purpose of selecting or rejecting UM and UIM coverage in July 2000. (Potts Aff. ¶ 6; Burton Aff. ¶ 7.)

The affidavits further state that to issue a Progressive Southeastern policy, All Risk was required to have the applicant physically present in the office to sign the application and supporting documents, including the approved Selection/Rejection Form. (Potts Aff. ¶ 10.) With the applicant physically present, All Risk would electronically transmit the information contained within the applicant's policy application, including the NC Form 0185 Selection/Rejection Form, directly to Progressive Southeastern through its electronic database. (Potts Aff. ¶ 8; Burton Aff. ¶ 9.) Once this was done, Progressive Southeastern would have immediately issued a new policy electronically, including policy declarations setting forth the data transmitted electronically from the applicant's application and Selection/Rejection Form. (Potts Aff. ¶ 9; Burton Aff. ¶ 10.) Progressive Southeastern contends that pursuant to these procedures Mrs. Greene completed her application for a Progressive Southeastern policy on July 14, 2000. (Potts Aff. ¶ 10.)

The affidavits further state that in response to the application by Mrs. Greene, Progressive Southern issued a new policy effective July 14, 2000, reflecting the information conveyed electronically as part of Mrs. Greene's application. (Potts Aff. ¶ 12; Burton Aff. ¶ 13.) The policy declarations for that initial policy indicated that Mrs. Greene rejected UIM coverage under her policy, and selected only UM coverage in the amounts of $50,000 per person and $100,000 per accident for bodily injury and $25,000 per accident for property damage, subject to a $100 property damage deductible. (Burton Aff. ¶¶ 12-13, Ex. A1.) The affidavits assert that these

-11-

Case 1:07-cv-00412-WO-WWD   Document 27   Filed 09/05/08   Page 11 of 20

policy declarations would have been issued in this form only upon the electronic transmission of Mrs. Greene's application for coverage by All Risk indicating that she had executed Form NC 0185 rejecting UIM coverage and requesting UM coverage for the issued amounts. (Burton Aff. ¶ 14; Potts Aff. ¶ 13.)

The affidavits further say that Progressive Southeastern had an established policy of what action to take by default in the absence of an affirmative indication that an applicant rejected or selected specific amounts of UM or UIM coverage. Under that procedure, the company would have issued the policy with UM and UIM amounts equal to the liability limits of the policy. (Burton Aff. ¶ 15.) Progressive Southeastern contends that the fact that it had to take affirmative action to issue a policy with provisions other than those called for by default under its routine procedures further supports the conclusion that Mrs. Greene rejected UIM coverage.

Finally, attached to the affidavit of Tiffany Burton is a copy of Form 0185 "as it existed and was utilized by Progressive Southeastern in July 2000." (*See* Burton Aff. ¶ 7, & Ex. B.) Progressive Southeastern contends that the form as it existed in July 2000 complied with the form as promulgated and accepted by the N.C. Rate Bureau and approved by the N.C. Commissioner of Insurance at that time.

Progressive Southeastern contends that this evidence of its routine business practices constitutes "affirmative proof" that Mrs. Greene was provided an opportunity to reject, and did reject, UIM coverage under the policy at the time of its initial purchase in July 2000, and that she executed the approved N.C. Form 0185,

in which she specifically rejected UIM coverage. Progressive Southeastern contends that it is therefore not required to provide UIM coverage for bodily injuries sustained by Jody Greene in the accident occurring on July 1, 2006.

In response to Progressive Southeastern's motion, and in support of her own motion for summary judgment, Mrs. Greene does not deny that she was offered and rejected UIM coverage. Rather, she states that she simply does not remember whether she was offered and rejected the coverage. More specifically, Mrs. Greene testified in her deposition that she remembered obtaining insurance from the All Risk agency, but she did not remember obtaining the Progressive Southeastern policy in July 2000.[3] (Sonya Greene Dep. pp. 24, 71, docket no. 16.) Therefore, Mrs. Greene has submitted no evidence on summary judgment to indicate whether she was offered and rejected UIM coverage by signing the requisite form. Mrs. Greene argues, nevertheless, that Progressive Southeastern's failure to produce the signed the form compels a conclusion as a matter of law that Mr. Greene should be allowed UIM coverage for injuries he sustained in the July 2006 accident. I agree.

First, I note that there appears to be no North Carolina case involving facts identical to those presented here–where the insurer has misplaced the UIM

---

[3] As Progressive Southeastern notes, Mrs. Greene acknowledged that she *did* sign a Selection/Rejection form *after* the July 2006 accident. (Sonya Greene Dep. pp. 71-72.) She acknowledged, based on recognition of her handwriting, that after the July 2006 accident she selected UM and UIM limits equal to her liability limits provided by her policy, or $50,000 per person and $100,000 per accident for bodily injury and $25,000 per accident for property damage.

-13-

Selection/Rejection form and wants to prove a valid rejection by use of the insurer's "routine business practices." Nevertheless, the North Carolina cases discussing strict compliance with section 20-279.21(b)(4) compel a finding here that evidence of the practices and procedures of an insurer and its agent for accepting and handling insurance applications, in the absence of a signed form, cannot satisfy the strict requirement under N.C. GEN. STAT. § 20-279.21(b)(4) that "[r]ejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau shall be made *in writing* by the named insured *on a form* promulgated by the Bureau and approved by the Commissioner of Insurance." To allow such evidence in the absence of a signed form would undermine North Carolina's emphasis on strict compliance with the statute. Furthermore, it would give an incentive to unscrupulous insurers to misplaced signed forms, particularly if the signed forms did not strictly comply with the statute.[4] That is, an insurer that obtained a signature rejecting UIM coverage on a form that did not comply with the N.C. Rate Bureau form could subsequently conveniently "lose" the form and then later contend that the form was in compliance. This federal court should not create such a loophole around the North Carolina statute.

---

[4] The court is in no way implying that Progressive Southeastern falls into this category of insurers, and the court assumes that the form was misplaced simply through lack of diligence. Nevertheless, to allow insurers to meet section 20-279.21(b)(4) with evidence of "routine business practices" and without the signed form itself, is an open invitation to Pandora.

Moreover, accepting "routine business practices" as evidence of a valid rejection of UIM coverage means that courts will effectively scrutinize an insurer's compliance more strenuously when the insurer actually *produces* a signed form than when an insurer fails to produce the form entirely.[5] That is, where an insurer produces the signed form, the form speaks for itself, and the court may compare it with the approved Rate Bureau form to ensure compliance, whereas allowing an insurer to use evidence of "routine business practices" forces the court to simply accept the insurer's representations regarding compliance. If such evidence were allowed, insurance companies would never have to produce a signed form and could always rely simply on their "routine business practices" to show that rejection of UIM coverage was valid. Such a result would most certainly undermine the North Carolina courts' emphasis on strict compliance with section 20-279.21(b)(4).

Next, as to the fact that the policy renewal declarations all stated that Mrs. Greene had rejected UIM coverage, as the North Carolina cases clearly demonstrate, coverage under section 20-279.21(b)(4) does not turn on whether the insured rejected coverage, but whether the insured *validly* rejected coverage–that is, whether the insurer provided the proper rejection form to the insured. Therefore,

---

[5] I further note the irony in that Progressive Southeastern insists that the court must accept its "routine business practices" as proof that Mrs. Greene signed the requisite form, when the evidence shows that Progressive Southeastern did not follow its own "routine business practices" with regard to, at least, retaining the requisite form. That is, it would appear that retaining UIM rejection forms is a "routine business practice," but it is clear that Progressive Southeastern did not follow its own routine business practices in that regard.

the fact that the policy renewal declarations in the Policy here state that the insureds rejected UIM coverage is irrelevant to the ultimate issue presented here. Similarly, the fact that the Greenes have not paid premiums for UIM coverage is also not relevant to whether Southeastern Progressive is obligated for coverage based on its failure to comply with the statute.

Finally, a finding of no valid rejection of UIM coverage here is consistent with the North Carolina courts' unequivocal statements, as discussed *supra*, that the Act must be construed liberally in favor of the insured and that the burden is always on the insurer to show rejection of UIM insurance. For all these reasons, I find that Progressive Southeastern's failure to produce the requisite form compels the conclusion that it is not in strict compliance with N.C. GEN. STAT. § 20-279.21(b)(4), and Mr. Greene is therefore entitled to UIM coverage based on injuries sustained in the July 2006 accident.

Having found that Progressive Southeastern has not complied with the statutory requirements for rejection of UIM coverage, I must consider Progressive Southeastern's alternative argument that North Carolina law at most requires UIM limits equal to the liability limits of the policy, or $50,000 per person, and $100,000 per accident for bodily injury. Progressive Southeastern states that the North Carolina General Assembly has expressly defined by statute the consequences of an insurer's failure to obtain the execution of an approved UM/UIM selection/ rejection form when issuing a motor vehicle policy. Sections 20-279.21(b)(3) and

-16-

(b)(4) contain virtually identical provisions, stating that "[i]f the named insured . . . does not select different coverage limits, the amount of [uninsured (b)(3)/underinsured (b)(4)] motorist coverage shall be equal to the highest limit of bodily injury and property damage [for UM coverage only] liability coverage for any one vehicle in the policy."  Progressive Southeastern contends that the North Carolina General Assembly therefore established "default" limits for UM and UIM limits in the absence of the execution of an approved form, as the highest bodily injury (UM and UIM coverages) and property damage limits (UM coverage only) applicable to any one vehicle under the policy. Progressive Southeastern notes that it had an existing policy in place to issue coverage with default amounts of UM and UIM coverage equal to a policy's liability limits in the absence of a signed selection/rejection form.  (Burton Aff. ¶ 15.)  The liability limits of the Policy issued to Mrs. Greene were, at all relevant times, $50,000 per person and $100,000 per accident for bodily injury.  Therefore, Progressive Southeastern contends that, at most, Mr. Greene is entitled to the default limits of UIM coverage of $50,000 per person and $100,000 per accident per bodily injury, rather than to the maximum amount recoverable under the statute, which is $1 million.

In support of this argument, Progressive Southeastern cites to *State Farm Mutual Automobile Insurance Co. v. Fortin*, 350 N.C. 264, 513 S.E.2d 782 (1999). In that case, the insured initially rejected UIM coverage, and the policy was later renewed with the continuing rejection of UIM coverage.  The forms provided at

Case 1:07-cv-00412-WO-WWD   Document 27   Filed 09/05/08   Page 17 of 20

renewal, however, merely contemplated renewal of previously selected coverage and failed to offer the insured a new opportunity to reject or select different UIM coverage limits as required by then-recent amendments to section 20-279.21(b)(4). *Id.* at 271, 513 S.E.2d at 785-86. The North Carolina Supreme Court interpreted the failure of the forms to provide the new choice to reject or select UIM coverage as an "invalid" rejection of UIM coverage. *See id.* The court concluded that because there was no "valid" rejection of UIM coverage, nor a selection of different UIM coverage limits, the statutory default limits under section 20-279.21(b)(4) applied (i.e., the highest maximum limit of bodily injury coverage for any one vehicle under the policy, which was $100,000 per person and $300,000 per accident). *Id.* Therefore, the court rejected the insureds' contention that they could recover the maximum amount allowed under the statute, which was $1 million. Progressive Southeastern contends that, like the insureds in *Fortin*, Mr. Greene's recovery should be limited to the default provisions of section 20-279.21(b)(4).

In response, the Greenes contend that they are entitled to the $1 million statutory limit for UIM coverage, rather than the limits of the policy. In support, they cite to *Williams v. Nationwide Mutual Insurance Co.*, 174 N.C. App. 601, 621 S.E.2d 644 (2005). In that case, it was undisputed that the insured husband and wife did not sign the requisite form for their policy at any time before the accident giving rise to their claims. The trial court granted the plaintiffs' motion for summary, determining that the amount of UIM coverage was the statutory limit of $1 million per person and

$1 million per accident, rather than the liability coverage limit of $50,000 per person and $100,000 per accident. *Id.* at 602, 621 S.E.2d at 645. In affirming the trial court's holding, the North Carolina Court of Appeals observed:

> "Underinsured coverage is mandatory unless rejected by the insured in accordance with the provisions of N.C. Gen.Stat. § 20-279.21." The statutory limitations for UIM coverage established in N.C.G.S. § 20-279.21(b)(4) take effect if the named insured does not reject UIM coverage or does not select UIM coverage limits different than the bodily injury liability coverage contained in the policy. Here, however, the insured was not given the opportunity to reject or select different coverage limits. If N.C.G.S. § 20-279.21(b)(4) were to apply in this situation, insurers would be permitted to establish default UIM coverage simply by failing to provide the proper rejection/selection forms to their clients. This would be contrary to the requirements set forth in the statute: "Such owner's policy of liability insurance: (4) Shall ... provide underinsured motorist coverage ... *as selected by the policy owner.*" *Id.* (emphasis added). The statute clearly establishes that the insured must be given the initial opportunity to reject or select different policy limits.
>
> While N.C. Gen. Stat. § 20-279.21(b)(4) does not address the applicable default policy limits where the insured is not given the opportunity to select or reject the UIM policy limits, this Court has held "[a]ny ambiguity in the Financial Responsibility Act (Act), which includes section 20-279.21(b)(4), must be liberally construed to effectuate the Act's remedial purpose-protecting innocent victims of automobile accidents from financially irresponsible motorists. . . . "
>
> . . . .
>
> A total failure on the part of the insurer to provide an opportunity to reject UIM coverage or select different UIM policy limits violates the requirement that these choices be made by the policy owner. Such a failure should not invoke the minimum UIM coverage limits established in N.C.G.S. § 20-279.21(b)(4) and shield the insurer from additional liability. So doing would violate the purpose of the statute to protect the insured and allow them to choose their policy benefits.

-19-

Case 1:07-cv-00412-WO-WWD   Document 27   Filed 09/05/08   Page 19 of 20

*Id.* at 605-06, 621 S.E.2d at 647 (citations omitted) (emphasis in original). I agree with the Greenes that Mr. Greene is entitled to $1 million in UIM coverage. That is, the facts in this case are more like the facts in *Williams* than in *Fortin*. The insureds in this case did not "invalidly" reject coverage as in *Fortin*. Rather, the failure of Progressive Southeastern to produce the requisite form in this case is treated as if Mrs. Greene were never offered the requisite form to either accept or reject. Therefore, rather than being entitled to the coverage limits under the policy, Mr. Greene is entitled to the maximum amount recoverable by statute, which is $1 million.

**Conclusion**

**FOR THE FOREGOING REASONS**, it is recommended that the court **GRANT** Defendants' motion for summary judgment (docket no. 22) and enter an order finding that Mr. Greene is entitled to UIM coverage of up to $1 million based on injuries he sustained in the July 2006 accident. To this extent, Plaintiff's motion for summary judgment should be **DENIED** (docket no. 13). Finally, Plaintiff's motion to consider summary judgment issues (docket no. 18) should be **GRANTED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
September 5, 2008